[No. A116944. First Dist., Div. Four. Nov. 27, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
OSCAR ADRIAN BELTRAN, Defendant and Appellant.

**COUNSEL**

Lauretta Marie Oravitz-Komlos, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Christopher W. Grove, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**RUVOLO, P. J.—**

## I. INTRODUCTION

Appellant Oscar Adrian Beltran (appellant) was convicted by a jury of driving under the influence of alcohol (count one) and driving with a blood-alcohol content (BAC) of 0.08 percent or more (count two) (Veh. Code, § 23152, subds. (a), (b), respectively). He appeals only from the conviction on count two, contending that the trial court erred by instructing the jury with CALJIC No. 12.61.1. This instruction allowed the jury to infer that appellant had a BAC of at least 0.08 percent while he was driving if a blood-alcohol test administered within three hours of the time he stopped driving revealed a BAC of 0.08 percent or more.

We reject appellant's broad claim that it is improper to instruct a jury as to a permissive inference whenever there is evidence introduced at trial that rebuts the inference. However, we agree with appellant that, based on the evidence presented at trial, there was no rational connection between the proved fact and the fact to be inferred sufficient to justify giving CALJIC No. 12.61.1. Because the error was prejudicial, we reverse the conviction as to count two.[1]

## II. PROCEDURAL AND FACTUAL BACKGROUND

On February 6, 2005, at approximately 3:00 a.m., appellant was stopped by a California Highway Patrol officer for speeding and weaving between lanes. The officer smelled a strong odor of alcohol emanating from inside appellant's car, and appellant admitted that he drank a "couple of beers" earlier that evening. About 3:15 a.m., the officer proceeded to administer a number of field sobriety tests. Appellant's performance on these tests indicated to the officer that he was intoxicated.

Appellant agreed to take a roadside breath test using a preliminary alcohol screening (PAS) device. Two PAS tests were administered at 3:46 a.m. and 3:48 a.m., respectively, and both recorded a BAC of 0.08 percent. At trial, the parties stipulated that these PAS tests results were reliable. Upon his arrival at the police station, and after the required 15-minute observation period,

---

[1] Appellant also contends that, even absent the instructional error, the jury's finding on count two was not supported by substantial evidence. In light of our reversal for instructional error, we need not address directly whether the evidence presented at trial met the substantial evidence standard. (*In re George T.* (2004) 33 Cal.4th 620, 630–631 [16 Cal.Rptr.3d 61, 93 P.3d 1007].)

appellant submitted two additional breath samples for further blood-alcohol screening using an intoxilyzer device. The results of both of these tests, the first taken at 4:12 a.m., indicated a BAC of 0.10 percent.

On February 8, 2005, appellant was charged with three misdemeanor violations: driving under the influence of alcohol (Veh. Code, § 23152, subd. (a); count one), driving with a BAC of 0.08 percent or more (Veh. Code, § 23152, subd. (b); count two), and driving with a suspended license (Veh. Code, § 14601.1, subd. (a); count three). The matter proceeded to a jury trial during which the court granted appellant's motion for judgment of acquittal on count three.

As to count two, both parties presented expert testimony which suggested that appellant's BAC was below the legal limit at the time he was driving. The prosecution's expert witness, criminalist Lois Woodworth, hypothesized that, assuming the reliability of the earlier PAS test results, appellant's BAC was around 0.068 percent when he was stopped. When the results of the intoxilyzer tests were considered, Woodworth estimated that appellant's BAC would have been within the range of 0.068 to 0.095 percent when he was stopped.[2]

The defense expert, forensic toxicologist Kenneth Mark, estimated that appellant had a BAC of 0.06 percent when he was stopped, assuming the reliability of both the PAS tests and the later intoxilyzer tests. He furthermore disagreed with the upper end of the range presented by Woodworth, because it would require appellant's BAC to decrease and then to increase again over a short period of time without further alcohol consumption.

At the conclusion of the evidence, the court instructed the jury using CALJIC No. 12.61.1, which provides as follows: "If the evidence establishes beyond a reasonable doubt that (1) a sample of defendant's blood, breath or urine was obtained within three hours after he operated a vehicle and (2) that a chemical analysis of the sample establishes that there was 0.08 percent or more, by weight, of alcohol in the defendant's blood at the time of the performance of the chemical test, then you may, but are not required to, infer that the defendant drove a vehicle with 0.08 percent by weight, of alcohol in the blood at the time of the alleged offense."

---

[2] For purposes of evidentiary breath testing, the third digit of the percentage test result reading is disregarded.

The record indicates that the jury returned with a question regarding the instruction's reference to the three-hour time period in CALJIC No. 12.61.1.[3] The jury resumed its deliberations, and thereafter returned a verdict convicting appellant as to both counts one and two.

On September 15, 2005, the trial court suspended imposition of sentence and placed appellant on three years' probation. Appellant filed a notice of appeal on October 13, 2005. On February 2, 2007, the appellate division of the San Francisco Superior Court affirmed appellant's convictions but remanded the matter to the trial court for resentencing. The appellate division also denied appellant's subsequent petition for rehearing and to transfer the appeal to this court. We granted appellant's petition for transfer filed directly with the Court of Appeal on March 15, 2007.

## III. DISCUSSION

### A. CALJIC No. 12.61.1 May Properly Be Given Where There Is Evidence Presented That Rebuts the Permissive Inference[4]

In order to convict appellant of violating Vehicle Code section 23152, subdivision (b), the prosecution must prove that (1) appellant drove a vehicle and (2) when driving, his BAC was 0.08 percent or more. As noted, CALJIC No. 12.61.1 permits the jury to infer that appellant drove a vehicle with a BAC of 0.08 percent or more if a breath sample taken within three hours of driving records a BAC of 0.08 percent or more.

Appellant contends on appeal that CALJIC No. 12.61.1 may not be given where there is evidence admitted at trial that rebuts the inference. If such evidence is presented by either party, "the trier of fact shall determine the existence or nonexistence of the presumed fact from the evidence and without regard to the presumption." (Evid. Code, § 604.) Unless treated this way, appellant argues that the instruction lowers the prosecution's burden of producing evidence, and shifts that burden improperly to the defendant.

---

[3] The jury's note is not part of the record on appeal, and the information regarding its content is gleaned only from the trial court's comment about it while the note was discussed with counsel in connection with appellant's postconviction motion for new trial.

[4] As the United States Supreme Court has explained, "The most common evidentiary device is the entirely permissive inference or presumption, which allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one . . . ." (*Ulster County Court v. Allen* (1979) 442 U.S. 140, 157 [60 L.Ed.2d 777, 99 S.Ct. 2213] (*Ulster*).) While courts have used the phrases "permissive inference" and "permissive presumption" interchangeably, for clarity's sake we refer to the "device" as a "permissive inference," the language employed in both CALJIC and Judicial Council of California Criminal Jury Instructions (CALCRIM).

The permissive inference allowed by CALJIC No. 12.61.1 originally derived from a mandatory rebuttable presumption contained in Vehicle Code section 23152, subdivision (b), and in section 604 of the Evidence Code.[5] Section 604 states: "a presumption affecting the burden of producing evidence is to require the trier of fact to assume the existence of the presumed fact *unless and until evidence is introduced which would support a finding of its nonexistence, in which case the trier of fact shall determine the existence or nonexistence of the presumed fact from the evidence and without regard to the presumption.* Nothing in this section shall be construed to prevent the drawing of any inference that may be appropriate." (Evid. Code, § 604, italics added.)

In *People v. Roder* (1983) 33 Cal.3d 491 [189 Cal.Rptr. 501, 658 P.2d 1302] (*Roder*) our Supreme Court considered an instruction containing mandatory, directive language given in the prosecution of a used goods dealer for receiving stolen property. In *Roder*, the jury was instructed that, if it found the foundational facts to be true, it " '. . . shall presume [guilty knowledge] unless from all the evidence you have reasonable doubt . . . .' " (*Id.* at p. 496.) The *Roder* court concluded that this mandatory, rebuttable presumption limited the jury's freedom to assess independently all of the prosecution evidence in order to determine whether the facts of the particular case establish guilt beyond a reasonable doubt. Therefore, the *Roder* court held that a jury instruction phrased as a rebuttable presumption in a criminal case was unconstitutional. (*Id.* at p. 498.)

*Roder* also explained that this constitutional infirmity does not infect jury instructions permitting the jury to draw permissive inferences: "[A] carefully drafted instruction which places the inference in context and does no more than inform the jury that upon the prosecution's proof of the four basic facts it is permitted—but not required—to infer guilty knowledge is fairly innocuous, for even without such an instruction a jury could, of course, reasonably infer that a secondhand dealer who fails to make reasonable inquiry when obtaining stolen property under suspicious circumstances knew that the property was stolen." (*Roder, supra,* 33 Cal.3d at p. 506.) Furthermore, permissive inferences "enable the court to inform the jury of an inference which the Legislature—drawing on its general experience—has concluded can often reasonably be drawn from proof of the basic facts." (*Id.* at p. 507.)

■ Our Supreme Court commented on the presumption/inference dichotomy more recently in *People v. McCall* (2004) 32 Cal.4th 175 [8

---

[5] "In any prosecution under this subdivision, it is a rebuttable presumption that the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of driving the vehicle if the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of the performance of a chemical test within three hours after the driving." (Veh. Code, § 23152, subd. (b).)

Cal.Rptr.3d 337, 82 P.3d 351]. " ' "Permissive presumptions" are not really presumptions at all. Instead, they are simply inferences drawn from evidence. They do not shift the prosecution's burden of production, and the jury is not required to abide by them. An instruction about a "permissive presumption" is really an instructed inference.' " (*Id.* at p. 183, fn. 5.)

The Committee on California Criminal Jury Instructions (the CALJIC Committee) amended CALJIC No. 12.61.1 in 1983 to provide only for a permissive inference. The phrase " ' "should find" ' " was replaced by " ' "may but are not required to infer" ' " leaving the trier of fact free to draw or reject the inference. The CALJIC Committee made this change believing it to be necessary to comply with the constitutional principles enunciated in *Roder.* (*People v. Milham* (1984) 159 Cal.App.3d 487, 505 [205 Cal.Rptr. 688].)

Despite this change, appellant claims that the permissive inference allowed in CALJIC No. 12.61.1 is inapplicable, and the instruction should not be given, if other evidence is admitted at trial that rebuts the inference. In making this argument, he relies principally on *People v. Moore* (1998) 65 Cal.App.4th 933 [76 Cal.Rptr.2d 872] (*Moore*). In *Moore*, the court held that the language limiting the use of presumptions in Evidence Code section 604 pertains as well to permissive inferences.[6] (65 Cal.App.4th at pp. 938–939.) *Moore* explained that because evidence was introduced at trial contradicting the inference, "the presentation of the required evidence places the issue before the jury for its determination based solely on the evidence presented, without regard to the presumption [citation] and without any reason to pinpoint a specific inference." (*Id.* at p. 939.) Therefore, *Moore* held that it was error for the trial court to use CALJIC No. 16.152.

By parity of reasoning, appellant claims that because there was evidence indicating that his BAC was below the legal limit at the time that he was driving, the jury should not have been instructed with CALJIC No. 12.61.1. In addition to *Moore*, appellant refers us to the Judicial Council's counterpart to CALJIC No. 12.61.1, CALCRIM No. 2111. Unlike CALJIC No. 12.61.1, in CALCRIM No. 2111 the paragraph containing the permissive inference is bracketed. The Bench Notes to CALCRIM No. 2111 explain that, to avoid the prohibition against evidentiary presumptions criticized in *Roder*, that instruction was drafted as permitting only a permissive inference. Nevertheless, in the apparent belief that there was a need to conform this new

---

[6] In *Moore*, the jury was instructed using CALJIC No. 16.152, as follows: "If the evidence establishes beyond a reasonable doubt that the parent of a child abandoned or deserted such child, or that the parent omitted to furnish the necessary food, clothing, shelter or medical attendance or other remedial care, you may infer that such omission was willful and without lawful excuse." (*Moore, supra,* 65 Cal.App.4th at p. 936, fn. 2.)

instruction to the limitation contained in Evidence Code section 604, the Bench Notes further explain that "it is only appropriate to instruct the jury on a permissive inference if there is *no* evidence to contradict the inference. (Evid. Code, § 604.) If any evidence has been introduced to support the opposite factual finding, then the jury 'shall determine the existence or nonexistence of the presumed fact from the evidence and without regard to the presumption.' (*Ibid.*)" (Bench Notes to CALCRIM No. 2111 (2007–2008 ed.) p. 146.)[7]

We agree with respondent that *Moore* and CALCRIM No. 2111 fail to recognize the important legal distinction between mandatory presumptions and permissive inferences. The holding in *Moore* is particularly puzzling because the opinion specifically acknowledges that CALJIC No. 16.152 was originally drafted as a mandatory rebuttable presumption, but had to be changed to a permissive inference in order to conform to *Roder*. (*Moore, supra*, 65 Cal.App.4th at pp. 937–938.) Accordingly, the *Moore* court initially concluded that there was nothing "facially wrong" with the revised instruction. (*Id.* at p. 936.)

However, *Moore* also cited the Use Note to CALJIC No. 16.152, which erroneously retained language from the time when the instruction provided for a mandatory rebuttable presumption: "Do *not* give this instruction if evidence has been received tending to prove that the failure to provide was not willful or was not without lawful excuse." (Use Note to CALJIC No. 16.152 (Spring 2007 ed.) p. 1092.) From this the court then concluded that as "the CALJIC Committee explains, the rebuttable presumption created by [Penal Code] section 270 is a presumption affecting the burden of producing evidence (*People* v. *Sorensen* (1968) 68 Cal.2d 280, 286–287 [66 Cal.Rptr. 7, 437 P.2d 495]), which means the presentation of the required evidence places the issue before the jury for its determination based solely on the evidence presented, without regard to the presumption (Evid. Code, § 604) and without any reason to pinpoint a specific inference. In this case, it was error to give CALJIC No. 16.152." (*Moore, supra*, 65 Cal.App.4th at pp. 938–939.)[8] By so concluding, the *Moore* court overlooked its earlier observation that the instruction had been changed from a mandatory rebuttable presumption to a permissive inference, and found error relying on principles which *Roder* makes clear apply only to rebuttable presumptions.

---

[7] CALCRIM No. 2100 contains similar bracketed and Bench Notes language regarding the permissive inference permitted under Vehicle Code section 23610 (if the defendant has BAC of 0.08 percent or higher at time of test, it may be inferred he or she was under the influence at the time of driving). This instruction and its corresponding Bench Notes suffer from the same infirmities as CALCRIM No. 2111, discussed, *post.*

[8] The Use Note to CALJIC No. 12.61.1 does not retain the same unnecessary limitation on the use of the instruction formerly reserved for mandatory rebuttable presumptions.

This appears to be the same error made by the drafters of CALCRIM No. 2111. Although the CALCRIM instruction, like CALJIC No. 12.61.1, now provides only for a permissive inference, the Bench Notes retain the cautionary language needed when the instruction had been cast as a mandatory rebuttable presumption: "[I]t is only appropriate to instruct the jury on a permissive inference if there is *no* evidence to contradict the inference. (Evid. Code, § 604.) If any evidence has been introduced to support the opposite factual finding, then the jury 'shall determine the existence or nonexistence of the presumed fact from the evidence and without regard to the presumption.' (*Ibid.*)" (Bench Notes to CALCRIM No. 2111, *supra*, p. 146.)

■ In summary, when used in appropriate cases, permissive inferences do not shift the burden of production or lower the prosecution's burden of proof. Because they may or may not be drawn by the jury, they do not operate in an unconstitutionally pernicious manner. For these reasons, CALJIC No. 12.61.1 may be given regardless of whether there is other evidence admitted at trial "rebutting" the inference. However, the use of permissive inferences is not permitted in all cases. Therefore, we must also consider whether the evidence in this case supported giving CALJIC No. 12.61.1, and if not, what legal consequences attach to erroneous giving of the instruction.

### B. The Permissive Inference in CALJIC No. 12.61.1 Was Not Rationally Connected to the Proven Fact, and It Was Prejudicial Error to Give the Instruction in This Case

The seminal case discussing the legal limits on the use of permissive inferences in criminal cases is *Ulster, supra,* 442 U.S. 140. That case involved a prosecution brought against the driver and passengers of a vehicle in which concealed weapons were found. Under New York law, the jury was instructed that the presence of a weapon was "presumptive evidence" of illegal possession by anyone in the vehicle. (*Id.* at p. 142.)[9]

■ The *Ulster* decision begins by noting that a determination of whether permissive inferences offend due process varies from case to case, and turns on the ultimate test of whether use of the "device" undermines the jury's responsibility to find the ultimate facts beyond a reasonable doubt. (*Ulster, supra,* 442 U.S. at p. 156.) As to permissive inferences, the prosecution's burden of proving guilt beyond a reasonable doubt is not improperly shifted from the prosecution to the defense unless, "under the facts of the case, there

---

[9] Under New York law, the three statutory exceptions to the presumption were if (1) the weapon was found on the person of one of the occupants, (2) the vehicle was primarily for hire, and (3) one of the occupants had a license to carry the weapon. (*Ulster, supra,* 442 U.S. at pp. 142–143, fn. 1.)

is no rational way the trier could make the connection permitted by the inference. For only in that situation is there any risk that an explanation of the permissive inference to a jury, or its use by a jury, has caused the presumptively rational factfinder to make an erroneous factual determination." (*Id.* at p. 157; see also *People v. James* (2000) 81 Cal.App.4th 1343, 1356 [96 Cal.Rptr.2d 823].)

Put in slightly different language, "[a]lthough such an instruction does not shift the burden of proof, it violates due process 'if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury.' *Francis*[ *v. Franklin* (1985)] 471 U.S. [307,] 314–315 [85 L.Ed.2d 344, 105 S.Ct. 1965] (citing [*Ulster, supra,*] 442 U.S. [at pp.] 157–63 . . .); [*U.S. v.*] *Washington*[ (9th Cir. 1987)] 819 F.2d [221,] 225." (*U.S. v. Warren* (9th Cir. 1994) 25 F.3d 890, 897, fn. omitted.)

The *Ulster* court then explained under what circumstances the " 'rational connection' " between the proven fact and the inferred fact must be " 'beyond a reasonable doubt' " and when that connection simply must be " 'more likely than not.' " (*Ulster, supra,* 442 U.S. at pp. 165–167.) The court reasoned that in most cases, the inference is merely one piece of evidence the prosecution relies on to prove guilt beyond a reasonable doubt. In those instances, if the prosecution relies on a permissive inference as evidence of the defendant's guilt, but offers other evidence of the defendant's guilt, there need be only a " 'substantial assurance that the presumed fact is *more likely than not* to flow from the proved fact on which it is made to depend.' " (*Id.* at p. 166, fn. 28, quoting *Leary v. United States* (1968) 395 U.S. 6, 36 [23 L.Ed.2d 57, 89 S.Ct. 1532], italics added.)

However, when an inference is the "sole and sufficient" proof of an element, the Supreme Court in *Ulster* determined that the reasonable doubt standard would apply. (*Ulster, supra,* 442 U.S. at p. 167.) This distinction makes sense. Where the permissive inference is the only evidence offered by the prosecution to prove an essential element of the offense, and the jury finds the defendant guilty, it necessarily follows that the jury relied solely on the inference in order to convict. Consequently, the presumed fact must follow from the proved fact beyond a reasonable doubt.

In this case, the sole evidence upon which the jury could have concluded that appellant had a BAC of 0.08 percent or greater when he was driving was the inference of that fact from a blood-alcohol test administered within three hours of driving that revealed a BAC of 0.08 percent or greater at the time of the test. Under *Ulster*, because the permissive inference was the sole evidence used to convict, the connection between the proved fact and the inferred fact had to be established beyond a reasonable doubt, in order to pass constitutional muster.

■ Here, the PAS tests administered at times significantly later than when appellant was stopped, which the parties stipulated were reliable, indicated a BAC of 0.08 percent. The later intoxilyzer tests showed a BAC of 0.10 percent. Thus, while in isolation either the PAS tests or the intoxilyzer tests were sufficient to allow for the inference permitted by CALJIC No. 12.61.1, *together* they show that appellant's BAC was *rising* from the time he was stopped until the intoxilyzer tests were administered. This circumstance is a classic example of the well-recognized defense in DUI cases known as the "rising blood-alcohol" defense. (*Helmandollar v. Department of Motor Vehicles* (1992) 7 Cal.App.4th 52, 55 [9 Cal.Rptr.2d 155]; see Taylor, Cal. Drunk Driving Defense (3d ed. 2001) Forensic Chemist: Blood-Alcohol, § 11.1.1, pp. 610–611.)

The prosecution's own expert testified concerning the effect of "rising alcohol": "[R]ising alcohol basically means that a person's blood alcohol concentration is increasing over time. And the defense part comes in, in that perhaps if a test was done at some time or period after the driving occurred, typically a longer period of time, like let's say two hours, that possibly at the time of driving, the person's actual BAC was below [0].08."

Additionally, both parties' expert witnesses hypothesized that, assuming the reliability of the PAS test results, appellant's BAC was under 0.08 percent when he was driving. For example, the prosecution witness opined that, based on the relationship between the time appellant was stopped by police and the time of the PAS tests, those tests indicated that his BAC at the time of driving was approximately 0.068 percent. If one looks instead at the intoxilyzer tests administered at 4:12 a.m., that test indicated that appellant's BAC at the time of driving was in the range of 0.06 to 0.09 percent.[10] However, the prosecutor's expert did not explain how, *if the two sets of tests were taken together*, and in light of his obviously rising BAC, appellant's BAC could have been 0.08 percent or higher 45 minutes before the first PAS test was administered.

To the contrary, appellant's expert opined that if the two sets of tests are considered together, then "clearly" appellant's BAC was below 0.08 percent when he was driving—probably in the order of 0.06 percent. While it was "possible" that his BAC could have gone down for the PAS tests, and then up again for the intoxilyzer tests, it was not a reasonable conclusion in this case.

---

[10] Even if one looked at the intoxilyzer results in isolation, and the expert's resultant extrapolation to a BAC somewhere between 0.06 and 0.09 percent at the time of driving, it is questionable whether such evidence proved beyond a reasonable doubt that defendant's BAC was 0.08 percent or higher at the time of driving. While there was other evidence that defendant was under the influence at the time of driving, our review of the record reveals no expert testimony tying defendant's objective symptoms of intoxication (weaving, speeding, odor of alcohol, and performance on field sobriety tests) to any particular BAC.

During closing arguments, the prosecutor encouraged the jury to follow CALJIC No. 12.61.1 and infer that appellant had a BAC of at least 0.08 percent based on either the PAS tests or the intoxilyzer tests.[11] The argument did not attempt to explain the relationship between the two sets of tests and their significance as to appellant's actual BAC while he was driving.

Taken as a whole, the connection between the proved fact (test result demonstrating a BAC of 0.08 percent or greater within three hours of driving) and the inferred fact (BAC of 0.08 percent or greater at the time of driving), which is an element of the charged crime, was not established beyond a reasonable doubt. Therefore, instructing the jury with CALJIC No. 12.61.1 was constitutional error that improperly lowered the prosecution's burden of proof.[12]

Both the United States and California Supreme Courts have held that the *Chapman* test[13] applies to appellate review involving challenges to jury instructions relating to mandatory rebuttable presumptions, because they diminish a defendant's right to proof beyond a reasonable doubt of each element of the charged offense. (E.g., *Carella v. California* (1989) 491 U.S. 263, 267 [105 L.Ed.2d 218, 109 S.Ct. 2419]; *Rose v. Clark* (1986) 478 U.S. 570, 579–581 [92 L.Ed.2d 460, 106 S.Ct. 3101].) In *People v. James, supra*, 81 Cal.App.4th 1343 [96 Cal.Rptr.2d 823], it was made clear that the *Chapman* standard applies also to challenges to instructions erroneously allowing permissive inferences. (*Id.* at pp. 1361–1362.) Respondent does not argue otherwise. Therefore, " 'we proceed to consider whether it appears beyond a reasonable doubt that the error did not contribute to [the] jury's verdict.' " (*People v. Huggins* (2006) 38 Cal.4th 175, 212 [41 Cal.Rptr.3d 593, 131 P.3d 995].)

There is no reasonable doubt that in this case the jury relied on the inference to convict. Indeed, as we have made abundantly clear already, the permissive inference was the only evidence used to establish appellant's guilt of a violation of Vehicle Code section 23152, subdivision (b). Moreover, because appellant's BAC was rising after the first test was administered, there was strong forensic evidence indicating that appellant's blood-alcohol level was below 0.08 percent when he was stopped by police. Without belaboring the matter further, under these circumstances it cannot be said beyond a reasonable doubt that the jury did not infer that appellant's BAC was at least

---

[11] In fact, the prosecutor tried to argue that the intoxilyzer tests were more accurate than the PAS tests. Apparently based on the stipulation of the reliability of the PAS tests by the parties, the trial judge sustained a defense objection to the comment and ordered it stricken.

[12] Even if the "more likely than not" test were to apply here, we would find that the prosecution's evidence failed to rise to the level required to make the inference reasonable.

[13] *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824].

0.08 percent, as erroneously instructed by CALJIC No. 12.61.1. Therefore, we reverse the conviction as to count two.

## IV. DISPOSITION

Count two of the judgment is reversed. The judgment is affirmed in all other respects.

Sepulveda, J., and Rivera, J., concurred.