Filed 2/24/14  P. v. Butler CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G047545 |
| v. | (Super. Ct. No. 10CF3335) |
| EDWARD STANLEY BUTLER, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, David A. Hoffer, Judge.  Affirmed.

Cynthia M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Alana Butler and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

\*       \*       \*

Edward Stanley Butler was convicted on counts of (1) vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (b); count 1); (2) driving under the influence and causing bodily injury (Veh. Code, § 23153, subd. (a); count 2); and (3) driving with a blood-alcohol level of .08 percent or more and causing bodily injury (Veh. Code, § 23153, subd. (b); count 3.) These counts arose out of an automobile accident in which Butler's car broadsided another car, killing its driver and injuring its passenger. He was sentenced to a total term of two years and two months in county jail, plus an additional six months of mandatory supervision.

Butler attacks his convictions on several grounds. He first contends the evidence was insufficient to support his conviction on count 3 because his blood-alcohol level was not tested until an hour and a half after the accident, and the prosecution expert's calculation of the level as of the time of the accident was based on her unsupported assumption his blood-alcohol level had already peaked by that time.

We are unpersuaded by the contention. In order to establish the elements of count 3, the prosecution was not required to establish the precise level of Butler's blood-alcohol level at the time of the accident – which the expert estimated at .25 percent based upon her assumption – only that the level was *at or above .08 percent*. Given that the evidence showed Butler's blood-alcohol level was .22 percent when tested – nearly three times the relevant limit – and the expert testified the alcohol absorption phase (the pre-peak period) is fairly rapid, it would be nearly impossible to conclude the level was not at least .08 percent at the time of the accident. In other words, the evidence was more than sufficient to support the conclusion that it was.

Butler's related contention is that the instructions informing the jury it was permitted to infer he was driving under the influence of alcohol, based upon evidence his blood-alcohol level tested in excess of .08 percent within three hours of the accident, impermissibly lowered the prosecution's burden of proof on the issue. We disagree because the permissible inference was quite consistent with the other evidence admitted.

2

But even if the instructions were flawed, we would conclude the error was harmless, because Butler expressly *conceded* his unlawful level of inebriation at trial. While such a concession does not relieve the prosecution's burden of proving that element of its case, it does persuasively demonstrate that the jury's finding on that issue did not arise out of any purported flaw in the instructions.

Butler also argues the court erred in denying his motion for dismissal under Penal Code section 1118.1, asserting there was insufficient evidence to establish that his negligence was the cause of the accident. We disagree. Significantly, the relevant issue as to each count is not whether Butler's negligence caused "the accident," but whether it caused *the injuries* suffered by the driver and passenger in the other car. The evidence demonstrated Butler failed to even apply his brakes before broadsiding that car, which was described as proceeding slowly across the street. Had he applied his brakes before hitting the car, it is quite likely Butler would not have caused these injuries. Every other driver was able to perceive the danger in time to take appropriate evasive measures. That evidence was sufficient to support the inference that even assuming a sober person in Butler's situation could not have entirely avoided hitting the car, he would have been able to slow down or alter course sufficiently to avoid inflicting these devastating injuries.

Finally, Butler asserts the court erred by failing to instruct the jury with CALCRIM No. 226, regarding how it should evaluate conflicts in witness testimony. We conclude the error, if any, was clearly harmless. We consequently affirm the judgment.

FACTS

This case arose out of an automobile accident in which Butler's pickup truck struck a car driven by Tamiko Kaminaga, killing her and injuring her son. The accident occurred at approximately 5:10 p.m., in daylight. Butler was driving south in the No. 1 lane (the fast lane) of Tustin Street in Orange. Kaminaga pulled out of a

3

parking lot on the west side of the street, intending to cross the three southbound lanes and turn left into northbound traffic. She drove slowly across the southbound lanes, at a speed one witness likened to "an idle speed."

Although there was evidence Kaminaga's decision to drive slowly across three lanes of traffic was not a wise one, and caused other southbound drivers to be concerned for her safety, those other southbound drivers were able to slow down, stop or change lanes to avoid colliding with her car. Only Butler failed to take any measures to avoid the collision. The undisputed evidence is that he failed to even apply his brakes before broadsiding Kaminaga's car. After the accident, her car was facing north with substantial damage in the center of the driver's side from the impact of Butler's truck.

When the first police officer arrived at the scene of the accident, Butler was outside of his truck and walking. The officer encountered him when Butler returned to the truck and was attempting to open the driver's side door. The officer halted Butler, who confirmed he had been driving the truck at the time of the accident. The officer observed Butler had bloodshot eyes, "heavily slurred" speech, and smelled of alcohol. The second officer arrived "a few minutes" after the accident and found Butler sitting in the driver's seat of his truck. He described Butler as showing signs of alcohol impairment: "His balance was – and coordination was a little off, [he] had a little bit [of] trouble walking, and he had a strong odor of alcohol coming from his person."

A subsequent search of the truck's interior revealed a bottle of vodka, wrapped in a brown paper bag and sitting in a wooden box, as well as a water bottle which was later determined to contain an alcoholic beverage. Both were located on the passenger floorboards.

Butler was transported to the hospital from the scene of the accident. Although he did not testify at trial, he was interviewed at the hospital in the wake of the accident and the transcript of that interview was entered into evidence. During the interview, Butler explained he had been at the Orange Mall prior to the accident, just

4

walking around and shopping. He ate a cheeseburger at McDonald's. He left the mall, got back into his car, and "headed down Tustin [Street.]" As he approached what he characterized as the intersection of Tustin Boulevard and Chapman Avenue, Kaminaga's car entered the street in front of his and he hit it. Butler acknowledged he did not apply his brakes before impact, explaining he had no time to do so because "[t]he car pulled right out in front of me." However, Butler also told a police officer that he first saw Kaminaga's car as it was coming out of the parking lot's driveway and going onto the southbound lanes of Tustin Street.

Butler categorically denied drinking any alcohol on the day of the accident, asserting he never drank alcohol. Butler claimed the bottle of vodka found in his car at the time of the accident "has been in there about two weeks." Butler's blood was tested approximately an hour and a half after the accident, and his blood-alcohol level was determined to be 0.222 percent at that time.

At trial, Butler conceded he was under the influence of alcohol at the time of the accident. His counsel acknowledged, in her opening statement, that the evidence Butler was "under the influence" or that his "blood alcohol concentration was over a .08" – which she characterized as "the elements for a D.U.I." – was "absolutely true." She explained, however, that the trial was not about that; instead, the trial was about whether Butler's inattention had *caused* the accident.

Butler called an expert witness, a mechanical engineer who specialized in accident reconstruction, who testified that in the circumstances of this case, even the average sober person would not have had adequate time to apply his brakes between the time Butler first saw Kaminaga's car and when he hit it. But this opinion rested largely on two points: First, that the average sober person would take a full 1.5 seconds between the time he initially saw a dangerous condition developing on the road before him and when he reacted to it; and second, that Butler could not see Kaminaga's car crossing the southbound lanes of Tustin Street until it actually began crossing *into his lane*.

5

In her closing argument, Butler's counsel chided the prosecutor for spending 45 minutes arguing to the jury that Butler had been under the influence at the time of the accident, an issue which counsel characterized as "never in dispute." She emphasized to the jury that while driving under the influence of alcohol is "serious in and of itself, . . . *that's not what you're here to decide. That was a no brainer. I told you that when we met. What you're here to decide is* if Mr. Butler did something else, something that caused – that was a substantial cause – or sorry, substantial factor in this accident, something that caused it. *Was he a cause of this accident. And the answer is simply no*." (Italics added.)

The jury returned a verdict of guilty on all three counts.

DISCUSSION

*1. Sufficiency of the Evidence to Establish Butler's Blood-Alcohol Level was at least .08 percent*

　*a. standard of review*

We apply a well-settled standard to Butler's contention the evidence was insufficient to support the jury's finding that his blood-alcohol level was at or above .08 percent at the time of the accident: "The standard of appellate review for determining the sufficiency of the evidence is settled. On appeal, '"we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence – that is, evidence that is reasonable, credible, and of solid value – from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.]' [Citation.] In conducting such a review, we '"presume[ ] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." [Citation.]' [Citations.] 'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive

6

province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.'" (*People v. Lee* (2011) 51 Cal.4th 620, 632.)

"The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence. [Citation.] '"Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt. '"If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment."'"'" (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

Finally, although Butler conceded at trial that he was too inebriated to be legally driving at the time of the accident, the concession did not relieve the prosecution of its burden to prove that fact. "[T]he prosecution's burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense." (*Estelle v. McGuire* (1991) 502 U.S. 62, 69 [112 S.Ct. 475, 116 L.Ed.2d 385].) "Defendant's not guilty plea put in issue all of the elements of the offenses," including the elements he conceded. (*People v. Steele* (2002) 27 Cal.4th 1230, 1243.)

b. *the evidence*

Butler contends the prosecution's expert based her conclusion that his blood-alcohol level was in the range of .24 percent or .25 percent at the time of the accident on an unsupported factual assumption – i.e., that his blood-alcohol level had peaked by the time of the accident, and thus was steadily decreasing between the accident

7

and the time his blood was tested an hour and a half later. The expert explained that assuming a person is in the "elimination phase," the rate at which their blood-alcohol level decreases is essentially constant, and thus can be relied upon to calculate how much higher the person's blood-alcohol level would have been at a designated time prior to when their blood was tested.

As the expert acknowledged, however, she had no information about the timing of Butler's drinking, and thus no basis upon which to determine precisely when his blood-alcohol level would have peaked. Butler's argument is that because the jury also had no evidence as to when he did his drinking, it would have no basis to determine his blood-alcohol level was actually at or above .08 percent at the time of the accident.

We disagree. What the expert explained is that when a person ingests alcohol, his blood-alcohol level is affected in two phases – the "absorption phase" and the "elimination phase." She stated the absorption of alcohol into the bloodstream happens "fairly rapidly" after ingestion, and at the end of that rapid absorption phase the blood-alcohol level from the ingested drink(s) is at its peak. The "elimination phase" commences after the blood-alcohol level reaches its peak, and a conservative estimate is that a person eliminates .015 percent of his blood alcohol per hour thereafter. Butler's blood-alcohol level was .22 percent when tested an hour and a half after the accident. The expert calculated that assuming Butler was in the elimination phase as of the time of the accident, and relying upon the .015 percent elimination rate, his blood-alcohol level would have been between .24 percent and .25 percent at the time of the accident. It is that conclusion Butler attacks on appeal, pointing out that since we have no evidence he actually was in the elimination phase by the time of the accident, the expert's estimate of his blood level at that time was unsupported.

Butler's attack, however, is poorly aimed. Simply put, the prosecution was not required to establish Butler's blood-alcohol level was *actually* .24 percent or .25 percent at the time of the accident. If that were its burden, Butler might have a winning

8

argument.  Instead, the prosecutor's burden was merely to convince the jurors that Butler's blood-alcohol level was *in excess of .08 percent*.  And the expert's testimony gave the jurors more than a sufficient basis to draw that conclusion.

The expert estimated that a blood-alcohol level of between .24 percent and .25 percent would equate to 10 to 12 standard drinks (defined as the equivalent of an ounce and a half of vodka each) in Butler's system.  Applying that same ratio, Butler's .22 percent blood-alcohol level an hour and a half after the accident equated to between 9 and 11 standard drinks in his system at that time – the equivalent of about 15 ounces of vodka.  And because Butler was transported to the hospital following the accident, there is no question but that he had ingested all of that alcohol *before* the accident.  So even if the jury assumed the .22 percent blood-alcohol level was Butler's highest, that level was sufficient to establish he had ingested approximately 10 drinks *before* the accident.

While it is possible Butler did some of that drinking just prior to the accident (the containers of alcohol found on the passenger floorboards of his truck suggest he had the opportunity to imbibe in his truck), there is no evidence those containers were open or accessible to him while driving.  Moreover, even if the jury believed Butler had continued his drinking until just minutes before the accident – and thus that not all of the alcohol he ingested had been absorbed into his bloodstream by that time – it would not have been precluded from determining Butler had already achieved a blood-alcohol level of .08 percent.  Applying the expert's ratio, a blood-alcohol level of .08 percent equates to 3 to 4 drinks absorbed into Butler's system – only about a third of the total amount of alcohol the evidence shows he ingested before crashing into Kaminaga's car.  Given the expert's testimony that the absorption of alcohol into the bloodstream happens "fairly rapidly," the jury could easily conclude that Butler's first 3 to 4 drinks would have been fully absorbed, and thus that the required .08 percent blood-alcohol level was reached, during the time it took Butler to imbibe his next 6 to 7 drinks and then hit Kaminaga's car.

9

Indeed, it seems the only way Butler could have had a blood-alcohol level which was below .08 percent at the time of the accident, but then rose to a level of .22 percent after, is if he essentially guzzled 15 ounces of vodka (or the equivalent) so close in time to the accident that the alcohol had no opportunity to be absorbed into his bloodstream before he hit Kaminaga's car, but then made him suddenly and terribly drunk almost immediately thereafter. That scenario is implausible, to say the least, and the jury was entitled to reject it.

In any event, we would conclude that the permissive inference authorized by Vehicle Code section 23153 would be sufficient to support the jury's conclusion in the circumstance of this case. That statute expressly authorizes a jury to draw an inference that a person whose blood test reveals a blood-alcohol level of at least .08 percent within three hours of driving also had a level of .08 percent or more at the time of driving. (Veh. Code, § 23153, subd. (b).) Butler relies on *People v. Beltran* (2007) 157 Cal.App.4th 235 (*Beltran*) to argue application of the inference is improper, but the circumstances of that case are clearly and materially distinguishable from those we have here.

In *Beltran*, the defendant's blood test revealed a blood-alcohol level of *exactly* .08 percent 45 minutes after he was cited, and then a second test, administered 30 minutes later, revealed his blood-alcohol level had *risen* to .10 percent. Based upon that rising level, the court noted "both parties presented expert testimony which suggested that appellant's [blood-alcohol level] was *below the legal limit at the time he was driving*." (*Beltran, supra*, 157 Cal.App.4th at p. 239, italics added.) In those particular circumstances, the court concluded that allowing the jury to rely solely on the permissive inference to establish a fact inconsistent with the evidence adduced at trial was improper because ""the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury."" (*Id.* at p. 245.) The court noted that blind adherence to a permissive inference in such cases "undermines the jury's responsibility to find the ultimate facts beyond a reasonable doubt." (*Id.* at p. 244.)

10

However, the *Beltran* court was careful to make clear that reliance on such permissive inferences would not be a problem in a case where the proven facts *were not* inconsistent with the inference: "[W]hen used in appropriate cases, permissive inferences do not shift the burden of production or lower the prosecution's burden of proof. Because they may or may not be drawn by the jury, they do not operate in an unconstitutionally pernicious manner." (*Beltran*, *supra*, 157 Cal.App.4th at p. 244.) In this case, by contrast to *Beltran*, we have no objective evidence suggesting Butler's blood-alcohol level of .22 percent an hour and a half after the accident – nearly three times the legal limit – was inconsistent with the inference his blood-alcohol level would have also been in excess of .08 percent at the time of the accident. And while there may have been other evidence which arguably undercut the inference in this case, *Beltran* makes clear that would not be enough to preclude its use: "[a permissive inference] may be given regardless of whether there is other evidence admitted at trial 'rebutting' the inference." (*Ibid*.)

In the circumstances of this case, the jury was entitled to rely on the permissive inference authorized by Vehicle Code section 23153, subdivision (b), and that inference was sufficient to sustain the jury's finding that Butler's blood-alcohol level was at least .08 percent at the time of the accident.

*2. The Jury Instructions*

Butler's next contention is that his convictions on all three counts must be reversed because the jury was improperly instructed it could infer his blood alcohol content was at or above .08 percent at the time of the accident for purposes of count 3, and could infer he was under the influence of alcohol at the time of the accident for purposes of counts 1 and 2, based solely on the result of the blood test taken an hour and a half after the accident. These instructions were based on Vehicle Code sections 23152 and 23153, which provide that for purposes of prosecutions under those statutes, "it is a

11

rebuttable presumption that the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of driving the vehicle if the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of the performance of a chemical test within three hours after the driving" (Veh. Code, §§ 23152, subd. (b), 23153, subd. (b)); and also on Vehicle Code section 23610, subdivision (a)(3), which sets forth a rebuttable presumption that "[i]f there was at [the time of the test] 0.08 percent or more, by weight, of alcohol in the person's blood, . . . the person was under the influence of an alcoholic beverage at the time of the alleged offense."

However, as we have already explained, such permissive inferences are appropriate in cases where the conclusion the jury is allowed (but not required) to draw is """"one that reason and common sense justify in light of the proven facts before the jury."""" (*Beltran, supra*, 157 Cal.App.4th at p. 245.) Here, the conclusion that Butler was too inebriated to legally drive at the time of the accident was not only justified, it was nearly inescapable. His speech was slurred, his eyes were watery, and he reeked of alcohol. His subsequent blood test revealed he had ingested *at least 10 drinks* before the accident. This was not a close case. And the mere fact that one witness, who was driving behind Butler at the time of the accident, testified he appeared to be driving at an appropriate speed and was not weaving in his lane before he struck Kaminaga's car does not materially change the analysis.

In any event, even if the instructions were erroneous, we would deem that error harmless. (See *Beltran, supra*, 157 Cal.App.4th at p. 247 [applying harmless error analysis to jury instructions "erroneously allowing permissive inferences"]; *People v. Flood* (1998) 18 Cal.4th 470, 505-507 [applying harmless error analysis to jury instruction which omitted an element of the crime].) While Butler's trial concession that he was illegally under the influence of alcohol at the time of the accident did not relieve the prosecution of its burden to prove that element of each count, it is nonetheless sufficient to demonstrate that any error in the jury instructions on that point was

12

harmless. "[I]nstructional error removing an element of the crime from the jury's consideration has been deemed harmless is where the defendant concedes or admits that element." (*Id.* at p. 504.)

*3. Denial of Butler's Motion to Dismiss*

At the close of the prosecution's case, and before calling his own expert witness to testify, Butler moved to dismiss all counts against him pursuant to Penal Code section 1118.1, arguing there was no substantial evidence to support the conclusion he was negligently inattentive at the time of the accident or that his inattention was the cause of the accident. In making this motion, Butler's counsel again conceded that he had been legally under the influence of alcohol at the time of the accident ("Yeah, he was duced. We all know he was duced"), and focused strictly on whether there was substantial evidence that a sober person in Butler's position would have been able to avoid hitting Kaminaga's car. Butler claims the trial court erred in denying the motion.

"The standard applied by the trial court under [Penal Code] section 1118.1 in ruling on a motion for judgment of acquittal is the same as the standard applied by an appellate court in reviewing the sufficiency of the evidence to support a conviction." (*People v. Mincey* (1992) 2 Cal.4th 408, 432, fn. 2.) Consequently, in assessing whether the trial court's ruling was correct, we employ the well-settled substantial evidence standard of review, set forth above.

Initially, we note that Butler's characterization of the relevant issue is somewhat misplaced. The question is not whether there was substantial evidence to demonstrate his inattention caused "the accident," but instead whether there was substantial evidence to demonstrate it caused *the grievous injuries* inflicted on Kaminaga and her son. (Pen. Code, § 191.5, subd. (b) [requiring the proximate result of the defendant's unlawful act be an "unlawful killing"]; and Veh. Code, § 23153, subds. (a), (b) [requiring the defendant's negligence cause "bodily injury"].) Thus, even assuming

13

there had been no substantial evidence that a reasonably attentive driver in Butler's position would have been able to *completely avoid* hitting Kaminaga's car (as the other drivers at the scene were able to do), he could still be convicted of these crimes if there was evidence that a reasonably attentive driver in his position could have even *applied his brakes in time to minimize the force of the unavoidable impact*. Had Butler done even that, the accident might well have involved mere property damage, rather than causing Kaminaga's death and the bodily injury inflicted on her son.

In denying Butler's motion, the trial court explained that while it was possible Butler was "screened out," and thus unable to see Kaminaga's car coming across the road until it actually reached his lane, there also was evidence he did see her car as it was first entering the roadway. The court also noted there was evidence Butler "react[ed] differently than other drivers did, and so a jury could infer that he was negligent or inattentive."

Butler argues the court's denial of his motion was erroneous because (1) the evidence he actually saw Kaminaga's car as it first entered the roadway (rather than when it first entered *his lane*) was not "substantial" as compared to other evidence, and (2) because the evidence that *other drivers* were able to avoid hitting Kaminaga's car provided an insufficient basis to infer that Butler had a reasonable opportunity to do so as well. We reject the argument.

As to the first point, it is the responsibility of the trier of fact to decide what weight to give certain evidence. (*People v. Stevey* (2012) 209 Cal.App.4th 1400, 1418 ["weaknesses or potential flaws were considerations for the jury in weighing the evidence"].) And it is well established that a single piece of evidence, even if it contradicts a veritable mound of other evidence, is sufficient to sustain a factual finding. "Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a

14

conviction." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) Here, the evidence that Butler saw Kaminaga's car as it first entered the roadway came from a police officer, whose recollection that Butler had acknowledged that fact was refreshed by reading his written report. Nothing about that evidence was inherently improbable, and the jury was entitled to believe it.

And as to the second point, Butler claims the fact that other drivers around him were able to avoid hitting Kaminaga's car "could not be imputed to [a] hypothetical attentive driver [in Butler's position] because they were in different lanes with different views and encountered [Kaminaga's] car at different times." In essence, Butler is suggesting that unless he personally testified, and admitted he had a clear view of Kaminaga's car as it slowly proceeded across the southbound lanes, no jury could ever reasonably infer that was true. We disagree. The jury could reasonably infer from the evidence that other southbound drivers were able to see Kaminaga's car as it made its way across the lanes, and react appropriately, that Butler had at least a similar opportunity. If Butler wished to distinguish his situation from those of the other drivers, it was up to him to offer some *evidence* demonstrating why his situation could be viewed as materially different than everyone else's. It is not enough to suggest that other cars *might have* screened off his line of sight, without offering evidence to support that suggestion. And even if Butler had offered such evidence, the jury would have been free to disbelieve it.

In any event, as the trial court noted, there was a significant difference between reactions of other drivers, who were able to take appropriate measures to avoid hitting Kaminaga's car, and the reaction of Butler, who failed to even apply his brakes before slamming into its side. The fact Butler failed to notice Kaminaga's car – which had traveled half-way across his lane by the time he hit it – in time to apply his brakes before impact is, in the circumstances of this case, a sufficient basis for inferring he was unusually inattentive.

15

Taken as a whole, the prosecution's evidence was more than sufficient to support the charges against Butler. We consequently conclude the trial court did not err in denying his motion to dismiss.

*4. Failure to Instruct the Jury on Witness Credibility*

Butler's final argument is that the court erred by failing to read the jury CALCRIM No. 226, a standard instruction that offers guidance about evaluating witness credibility. As Butler explains, the court had agreed to give this instruction, and apparently intended to do so, but "for reasons not apparent in the record, presumably an oversight," failed to include it among the instructions given.

We agree it was error to omit the instruction, as the court had a *sua sponte* obligation to give it. (*People v. Rincon-Pineda* (1975) 14 Cal.3d 864, 883.) However, we disagree with Butler's assertion the error was not harmless.

Butler contends the witness credibility instruction was crucial "[b]ecause this trial turned entirely on the testimony of four eyewitnesses, four officers, and two experts, and because the testimony of these various witnesses were often contradictory, the jury had to evaluate witness testimony in order to deliberate on these charges." But as the Attorney General points out, there were actually no significant contradictions in the witness testimony. It is fair to say the general consensus among the eyewitnesses was that Kaminaga's slow procession across the road was dangerous, and nobody claimed Butler had shown signs of impaired driving prior to the accident. The central dispute of the trial was not about determining what occurred, but instead about interpreting the significance of what were essentially the undisputed circumstances of the accident. The question to be decided by the jury was whether a reasonable sober person in Butler's position would have been able to avoid killing Kaminaga and injuring her son.

Butler's expert witness – the accident reconstructionist – was the only witness whose credibility was seriously challenged in connection with that material issue.

16

The prosecutor challenged his opinion concerning the time it would take for a car to stop without skidding. Butler suggests that without the proper instruction informing the jury it could disregard part of a witness's testimony, while still believing other parts, the jury would have been less likely to credit the other parts of the expert's testimony which were beneficial to Butler. But the other part Butler refers to specifically is the expert's claim that the average time it takes for a sober person to react to a dangerous condition on the road is 1.5 seconds. And that is a claim the jurors would likely assess based upon their own experience as drivers.

In the circumstances of this case, we conclude the court's failure to instruct the jury regarding witness credibility was harmless error.

## DISPOSITION

The judgment is affirmed.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

BEDSWORTH, J.

THOMPSON, J.

17