Filed 3/28/23  P. v. Canady CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C095902 |
| Plaintiff and Respondent, | (Super. Ct. No. 21FE009387) |
| v. | |
| SHANON DENORIS CANADY, | |
| Defendant and Appellant. | |

A jury found defendant guilty of various charges related to driving under the influence of alcohol with prior violations and found true allegations defendant had a blood-alcohol level of 0.15 percent and 0.20 percent or higher.  The trial court sentenced defendant to the two-year middle term.

On appeal, defendant contends:  (1) there was insufficient evidence that his blood-alcohol content was 0.08 percent or higher while he was driving (Veh. Code, § 23152,

1

subd. (b));[1] and (2) the trial court violated his right to due process in instructing with CALCRIM No. 2111. We will affirm.

## I. BACKGROUND

On June 1, 2021, at approximately 11:35 p.m., Officer Reynaldo Garcia-Barron witnessed defendant drive partially into an intersection from a left-turn lane, reverse direction, switch lanes, and make a right turn. In Garcia-Barron's opinion, defendant's maneuver created a danger to cars on his right. As defendant completed the right turn, Garcia-Barron noticed defendant's vehicle did not have a license plate. Garcia-Barron turned on his lights and initiated a traffic stop. As he stopped his car, defendant nearly collided with a light pole. Defendant immediately exited his car and yelled at Garcia-Barron concerning the traffic stop. Garcia-Barron ordered the six-foot tall, 210-pound defendant back into his vehicle, and he did not comply with the order.

While defendant was out of his car, Garcia-Barron observed defendant could not maintain his balance and had an empty 12-ounce beer bottle in his left hand. Defendant's eyes were red and watery and he smelled like alcohol. Defendant slurred his words and admitted to drinking one beer "way earlier." When Garcia-Barron asked about the beer in defendant's hand, defendant stated, "I'm going down."

To determine whether defendant could perform field sobriety tests, Garcia-Barron asked defendant pre-field sobriety questions and defendant contradicted himself regarding his physical impairments. Defendant failed multiple sobriety tests, including the horizontal gaze nystagmus test and the one-legged stand. In fact, defendant performed the one-legged stand so poorly that Garcia-Barron stopped the test for defendant's safety. Finally, Garcia-Barron asked defendant to write the alphabet and

---

[1] Undesignated statutory references are to the Vehicle Code.

current date; a test defendant failed by omitting the "N" and "O" in the alphabet and incorrectly identifying the date as May 21.

Garcia-Barron administered three preliminary alcohol screening tests 22, 24, and 26 minutes after the traffic infraction which returned blood-alcohol concentrations of 0.233, 0.256, and 0.243 percent, respectively. Based on defendant's performance on the field sobriety tests and the results of the preliminary alcohol screening tests, Garcia-Barron concluded defendant was intoxicated and arrested him. Two chemical breath tests conducted approximately one hour after defendant's traffic infraction revealed blood-alcohol concentrations of 0.25 and 0.23 percent, respectively.

The People charged defendant as follows: felony driving under the influence of alcohol within 10 years of a prior conviction for driving under the influence (§§ 23152, subd. (a), 23550.5, subd. (a)—count one), felony driving with a 0.08 percent blood-alcohol content within 10 years of a prior conviction for driving under the influence (§§ 23152, subd. (b), 23550.5, subd. (a)—count two), driving with a suspended license, a misdemeanor (§ 14601.2, subd. (a)—count three), and operating a motor vehicle without an ignition interlock device, a misdemeanor (§ 23247, subd. (a)—count 4). As to count two, the People alleged defendant's blood-alcohol content exceeded both 0.15 percent (§ 23578) and 0.20 percent (§ 23538, subd. (b)(2)). Defendant pled not guilty and denied all allegations.

At trial, a criminalist certified for forensic alcohol analysis confirmed the accuracy of the chemical testing. The criminalist defined and calculated drink equivalents to estimate how many drink equivalents were in a person's system based on certain blood-alcohol concentrations. Given the test results and defendant's body size, the criminalist opined that had defendant consumed one less drink prior to being stopped his blood-alcohol concentration would have only dropped 0.018 percent. The criminalist explained that on average, full absorption of alcohol takes 45 minutes; meanwhile, alcohol is

3

generally eliminated from the body at a rate of .01 to .03 percent per hour. The criminalist did not offer an opinion on average absorption rates.

In bifurcated proceedings prior to trial, defendant pled no contest to counts three and four. After trial, the jury found defendant guilty of driving under the influence (count one) and driving with a prohibited blood-alcohol concentration (count two). The jury found the blood-alcohol content allegations true, and defendant admitted the prior conviction for driving under the influence of alcohol. The trial court sentenced defendant to the two-year middle prison term for count two, driving with a prohibited blood-alcohol concentration, imposed and stayed a concurrent two-year term for count one, driving under the influence, and imposed and stayed two 10-day terms in jail for driving with a suspended license and driving without an ignition interlock device, counts three and four.

## II. DISCUSSION

### A.    *Sufficiency of the Evidence*

Defendant challenges the sufficiency of the evidence to show his blood-alcohol concentration was 0.08 percent or higher at the time he drove the car. Specifically, defendant contends since there was no expert testimony as to how the blood-alcohol concentration test results correlated to his blood-alcohol concentration at the time he was driving, the "sole evidence" of his blood-alcohol concentration level at the time he was driving was the presumptive inference drawn from the blood-alcohol concentration test and set forth in CALCRIM No. 2111. We disagree.

In reviewing a defendant's challenge to the sufficiency of the evidence, we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) Substantial evidence is evidence that is credible, reasonable, and of solid value such that a reasonable jury could find the defendant guilty beyond a reasonable doubt. (*Ibid.*) We do not reassess the credibility of witnesses, and we draw all inferences from the evidence that supports the jury's verdict. (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1382.)

4

Unless the testimony of a single witness is physically impossible or inherently improbable, it is sufficient to support a conviction. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

Section 23152, subdivision (b) prohibits "a person who has a 0.08 percent or more, by weight, of alcohol in his or her blood to drive a vehicle." The crucial issue is whether defendant's blood-alcohol concentration was 0.08 percent or higher, *while he was driving*. Since a chemical test will rarely (if ever) be performed while the defendant is driving, circumstantial evidence will generally be necessary to establish a defendant's blood-alcohol concentration at the time they were driving. (*Burg v. Municipal Court* (1983) 35 Cal.3d 257, 266, fn. 10, superseded by statute on a different point.) " 'Evidence that at the time the person charged smelled strongly of alcohol, was unable to stand without help, suffered from nausea, dizziness or any of the other "symptoms" of intoxication would justify an inference that a test administered some time after arrest probably produced lower readings than that which would have been produced had the test been administered at the moment of arrest.' " (*Coffey v. Shiomoto* (2015) 60 Cal.4th 1198, 1215, italics omitted.) These symptoms of intoxication can "bolster chemical test results showing that [he] had attained or exceeded" the 0.08 percent level. (*Coffey, supra*, at p. 1216.)

Additionally, the jury was instructed with CALCRIM No. 2111 that if the People proved beyond a reasonable doubt that a sample taken within three hours of defendant's driving showed a blood alcohol level of 0.08 percent or more, it could conclude that defendant's blood alcohol level was 0.08 percent or more at the time of the alleged offense. When, in addition to this permissive inference, the prosecution offers other evidence of defendant's guilt, there need be only a " ' "substantial assurance that the presumed fact is *more likely than not* to flow from the proved fact on which it is made to depend." ' " (*People v. Beltran* (2007) 157 Cal.App.4th 235, 245 (*Beltran*).) Otherwise,

"the connection between the proved fact and the inferred fact [must] be established beyond a reasonable doubt." (*Ibid*.)

Multiple chemical tests, taken within 22 minutes to one hour of defendant driving, showed defendant had between a 0.23 and 0.26 percent blood-alcohol concentration. There was also evidence that one less drink for a man of defendant's size would change his blood-alcohol concentration by only approximately 0.018 percent; from which the jury could conclude drinking the single beer in his hand could not have caused defendant's elevated blood-alcohol concentration levels. The jury also heard testimony concerning defendant's actions, appearance, and presentation while driving, and at the time of his arrest. Late at night, defendant made a dangerous driving maneuver and nearly collided with a pole during the traffic stop. Defendant immediately exited his car, yelled at the officer, and did not comply with direct orders. He was holding an empty beer bottle, admitted to drinking earlier, and stated he was "going down." Defendant contradicted himself during field-sobriety questioning. He could not complete the one-legged stand test, because Garcia-Barron had to stop the test when defendant nearly fell down. Defendant failed the alphabet sobriety test, omitting the "N" and "O," and misidentified the current date by 11 days. Finally, defendant failed the horizontal gaze nystagmus test, smelled of alcohol, slurred his speech, and had red and watery eyes. Defendant's conduct during the stop, his performance on the field sobriety tests, and these symptoms of intoxication allowed the jury to draw reasonable inferences to support the conclusion that defendant's blood-alcohol concentration was greater than 0.08 percent when he was driving. Substantial evidence supports the conviction.

B.    *CALCRIM No. 2111*

Defendant contends the trial court violated his due process rights when it instructed the jury on the permissive inference under CALCRIM No. 2111. Defendant relies on *Beltran, supra*, 157 Cal.App.4th 235 to argue application of the inference is

improper, but the circumstances of that case are clearly and materially distinguishable from those we have here.

In *Beltran*, the defendant's chemical breath test revealed a blood-alcohol level of exactly 0.08 percent 45 minutes after he was stopped for multiple traffic violations. Subsequent tests, administered 30 minutes later, revealed his blood-alcohol level had risen to 0.10 percent. (*Beltran, supra*, 157 Cal.App.4th at pp. 238-239.) Defendant argues that, just as in *Beltran*, his blood alcohol content may have been rising at the time the tests were taken. But defendant's blood alcohol readings were much higher initially. Further, and critically, in *Beltran*, the appellate court noted "both parties presented expert testimony which suggested that appellant's [blood-alcohol level] was *below* the legal limit at the time he was driving." (*Id.* at p. 239, italics added.) In those particular circumstances, the court concluded that allowing the jury to rely solely on the permissive inference to establish a fact inconsistent with the evidence adduced at trial was improper because " ' "the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." ' " (*Id.* at p. 245.)

However, the *Beltran* court was careful to make clear that reliance on such permissive inferences would not be a problem in a case where the proven facts were not inconsistent with the inference: "[W]hen used in appropriate cases, permissive inferences do not shift the burden of production or lower the prosecution's burden of proof. Because they may or may not be drawn by the jury, they do not operate in an unconstitutionally pernicious manner." (*Beltran, supra*, 157 Cal.App.4th at p. 244.) In this case, in contrast to *Beltran*, in addition to the permissive inference allowed by the jury instruction, the People offered strong circumstantial evidence that defendant's blood-alcohol concentration was at or above 0.08 percent when he was driving. Defendant drove dangerously, nearly collided with a light pole, and failed several field sobriety tests. He also exhibited various physical symptoms of intoxication. Considering the entirety of the evidence at trial, we conclude there is substantial assurance that the

presumed fact (defendant had a more than 0.08 percent blood-alcohol content) is more likely than not to flow from the proven fact (that chemical tests performed within three hours of his driving showed a blood-alcohol content far in excess of 0.08 percent).

In the circumstances of this case, the jury was entitled to rely on the permissive inference authorized by section 23152, subdivision (b).

### III.  DISPOSITION

The judgment is affirmed.

/S/

_____

RENNER, Acting P. J.

We concur:

/S/

_____

KRAUSE, J.

/S/

_____

EARL, J.