[No. D017554. Fourth Dist., Div. One. Jan. 31, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
PAULIN GALLARDO, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I, III, IV, VI, VII, VIII and IX.

## COUNSEL

John Leis Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Keith I. Motley and Esteban Hernandez, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WORK, Acting P. J.**—Paulin Gallardo appeals a judgment, following a jury trial, convicting him of gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5), driving under the influence of alcohol and causing injury (Veh. Code,[1] § 23153, subd. (a)), leaving the scene of an accident resulting in injury (§ 20001), and false personation (Pen. Code, § 529.3). True findings were made on specific allegations regarding the first two counts that Gallardo injured more than one victim (§ 23182) and regarding the third count that the injury resulted in death (§ 20001, subd. (b)(2)). He was sentenced to the midterm of six years on the first count, with consecutive one-year enhancements for each of the two other victims (§ 23182). Lesser sentences on the other convictions were made concurrent to the sentence on the first count. Gallardo contends there is insufficient evidence in support of his convictions on the first two counts. He also contends the court erred in allowing a prosecution expert to give an opinion regarding the level of alcohol that impairs an individual's ability to drive. He also contends the court erred in preventing a defense expert from stating his opinion as to the cause of the accident, a safe speed for entering the intersection, and perception reaction time differences. He also contends the court erred in instructing the jury and in allowing the jury to continue deliberating after it indicated it was deadlocked. For the following reasons, we affirm the judgment.

---

[1] All statutory references are to the Vehicle Code unless otherwise specified.

I*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II

 Gallardo first contends there is insufficient evidence in support of a finding he was intoxicated or driving under the influence, so his convictions for gross vehicular manslaughter while intoxicated and for driving under the influence causing injury must be reversed. However, we conclude the record clearly contains substantial evidence for the jury to find beyond a reasonable doubt that Gallardo was intoxicated and under the influence of alcohol.

### A.

 As an appellate court, we look to whether there is substantial evidence in the record in support of the questioned element of the charged offense. (*People* v. *Diaz* (1992) 3 Cal.4th 495, 534 [11 Cal.Rptr.2d 353, 834 P.2d 1171]; *People* v. *Wright* (1985) 39 Cal.3d 576, 592 [217 Cal.Rptr. 212, 703 P.2d 1106].) It is not our function to decide whether the evidence proves the existence of that element beyond a reasonable doubt, as that finding and weighing of the evidence has already been performed by the trier of fact at the trial level. (*People* v. *Wright, supra,* 39 Cal.3d at p. 592; *People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]; *People* v. *Reilly* (1970) 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649].) We review the whole record in the light most favorable to the judgment and presume in support of the judgment every fact the trier could reasonably deduce from the evidence. (*People* v. *Johnson, supra,* 26 Cal.3d at p. 576; *People* v. *Reilly, supra,* 3 Cal.3d at p. 425.) "Substantial evidence" is evidence which is reasonable, credible, and of solid value, and it is such that a reasonable trier of fact could find a defendant guilty beyond a reasonable doubt. (*People* v. *Johnson, supra,* 26 Cal.3d at p. 578.)

### B.

 The record in this case contains ample evidence of Gallardo's driving while under the influence of alcohol. The jury was given the proper definition of "under the influence" as contained in CALJIC No. 12.60: "A person is under the influence of an alcoholic beverage when as a result of [drinking] such alcoholic beverage his physical or mental abilities are impaired so that he no longer has the ability to drive a vehicle with the caution

---

*See footnote, *ante,* page 489.

characteristic of a sober person of ordinary prudence, under the same or similar circumstances." Gallardo's impairment is shown by both his actions and his blood-alcohol content. Amador, his passenger, testified Gallardo "burned rubber" leaving the church parking lot, ran the first stop sign, ignored his plea to slow down, and then ran the fatal second stop sign. Amador said Gallardo, in fact, accelerated through the first stop sign, and Amador could see the second stop sign ahead.

Gary Ryno, an officer with the El Cajon Police Department and the prosecution's accident reconstruction expert, inspected Gallardo's Camaro after the accident and testified its brakes were operable at the time of the accident. Both reservoirs of brake fluid had sufficient amounts, and there was no leakage of fluid at any of the wheel cylinders. The brake pads were worn somewhat, but not enough to affect braking efficiency. Also, Ryno arrived at the scene within an hour of the accident, and he testified at trial that the overhead street light at the intersection was operating and adequately illuminated the intersection at the time of the accident. He observed the stop sign and painted "stop" on the street were both clearly visible and unobstructed. After inspecting the damage to the vehicles and the accident scene, Ryno concluded the collision occurred as Gallardo failed to stop at the posted stop sign and broadsided the other car going 34 miles per hour. No brake skid marks were left by either car. The other car had the right of way in the intersection, and the collision was totally Gallardo's fault. Gallardo's driving conduct as testified to by Amador and Ryno is not that expected of a sober person of ordinary prudence.

Gallardo testified he ate dinner that night between 7:30 and 8 p.m., then drank two beers at a bar between about 9 and 11 p.m., and then drove to the church to pick up his sister and her friends. Gallardo was five feet, two inches tall, and he weighed one hundred fifteen pounds. He admitted he could feel the effect of the two beers "a little bit," and stated this meant he felt "a little bit dizzy." While sitting in his car, he drank another beer about five to six minutes before the accident. He admitted his tires spun fast "just a little bit" before leaving the church parking lot. He claimed he stopped at the first stop sign, and his brakes worked at that point. He had worked on his brakes a couple of weeks before the accident and found no problems. He said he saw the stop sign at the second intersection too late to stop because it was "very dark." He said the brake pedal went all the way to the floor, and he was unable to stop at the second stop sign. He hit his head, mouth, and knees, and he felt confused. He left the scene of the accident, fearing immigration authorities would deport him. He walked to the 7-Eleven store and telephoned his brother to pick him up, although some other people he knew arrived and gave him a ride. However, on cross-examination, he

admitted that after the crash he ran away and jumped over a fence, and hid for a while before telephoning his brother and asking him to go to the accident scene to see what happened to the other people who he thought might be injured. He admitted telling Cameron Demarco, an officer with the El Cajon Police Department, and Gilbertina Blocker, a border patrol agent bilingual in Spanish and English, his name was Jose Nunez. He got a false identification card with his picture and his brother's name on it, so he could get into places where you needed to be older. He did not possess a driver's license.

Celia Nicholson, a blood-alcohol analyst with the San Diego County Sheriff's Department, testified as the prosecution's blood-alcohol expert. She stated different people have different tolerance levels for alcohol in that some may be impaired after just one drink and others may be impaired only after a number of drinks. Although Gallardo's blood-alcohol content was .03 percent at 2:25 a.m. the night of the accident, it could have been between .04 and .07 percent at the time of the accident two hours earlier. Both she and Daniel Vomhoff, the defense expert, estimated Gallardo's blood-alcohol level to be .05 percent at the time of the accident. Nicholson described one of the initial effects of alcohol is a decrease in self-restraint and an impairment of judgment.

Demarco and Thomas Buhl, an accident investigator with the El Cajon Police Department, also observed symptoms consistent with Gallardo's alcohol use and impairment. Demarco observed his red appearance with watery eyes, difficulty with balancing, and unsteady gait, and the odor of alcohol on his breath. After speaking with Gallardo, Demarco formed the opinion he was possibly under the influence of alcohol. Buhl observed Gallardo's bloodshot eyes, odor of alcohol on his breath, a somewhat slow demeanor, and he formed the opinion he was "driving while under the influence of alcohol."

Based on the ample evidence of Gallardo's conduct before the accident, after the accident (which conduct supports an inference of consciousness of guilt), and the objective blood-alcohol level and accompanying symptoms of alcohol use, there was sufficient evidence for the jury to conclude beyond a reasonable doubt Gallardo was driving under the influence for the purposes of the first two counts. He clearly was not driving with the caution characteristic of a sober person of ordinary prudence under the same or similar circumstances. Further, the rebuttable presumption of section 23155, subdivision (a), that a person is not under the influence if his or her blood-alcohol level is .05 percent or less at the time of the test was sufficiently rebutted by the evidence summarized above.

III, IV*

. . . . . . . . . . . . . . . . . . . . . . . . . .

V

He next contends the court erred in denying his request that the jury be instructed the presumption in section 23155, subdivision (a)(1), is a mandatory presumption. Section 23155 reads in relevant part:

"(a) Upon the trial of any criminal action, or preliminary proceeding in a criminal action, arising out of acts alleged to have been committed by any person while driving a vehicle while under the influence of an alcoholic beverage in violation of subdivision (a) of Section 23152 or subdivision (a) of Section 23153, the amount of alcohol in the person's blood at the time of the test as shown by chemical analysis of that person's blood, breath, or urine shall give rise to the following presumptions affecting the burden of proof:

"(1) If there was at that time less than 0.05 percent by weight of alcohol in the person's blood, it shall be presumed that the person was not under the influence of an alcoholic beverage at the time of the alleged offense.

"(2) If there was at that time 0.05 percent or more but less than 0.08 percent by weight of alcohol in the person's blood, that fact shall not give rise to any presumption that the person was or was not under the influence of an alcoholic beverage, but the fact may be considered with other competent evidence in determining whether the person was under the influence of an alcoholic beverage at the time of the alleged offense.

"(3) If there was at that time 0.08 percent or more by weight of alcohol in the person's blood, it shall be presumed that the person was under the influence of an alcoholic beverage at the time of the alleged offense.

" . . . . . . . . . . . . . . . . . . . . . . . . .

"(c) This section shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether the person ingested any alcoholic beverage or was under the influence of an alcoholic beverage at the time of the alleged offense." The court instructed the jury with slightly modified forms of section 23155, subdivision (a)(1) and (a)(2). When the jury inquired whether the presumptions of section 23155 superseded the provisions of section 23153, subdivision (a), Gallardo's counsel

*See footnote, *ante,* page 489.

requested the court instruct the jury that the presumption of nonintoxication when a test shows a blood-alcohol level below .05 percent is a mandatory presumption. The court refused this request, ruling section 23155, subdivision (a)(1), was a rebuttable presumption.

We conclude the court correctly interpreted section 23155, subdivision (a)(1), by ruling it was a rebuttable presumption. Gallardo fails to produce any case law in support of his interpretation that it is a mandatory presumption, and we likewise found none. The natural and logical reading of section 23155 is that its presumptions are rebuttable. Subdivision (a) of section 23155 expressly states that its presumptions affect the "burden of proof," which implicitly means there is a further burden placed upon the party adversely affected by the burden to go forward with sufficient proof to defeat the presumption. If the statute were a "mandatory presumption" (i.e., a conclusive presumption), there would be no point in allowing the adversely affected party to go forward with further proof contrary to the presumption, as the matter would already be definitively decided. Similarly, subdivision (c) of section 23155 expressly states it "shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether the person ingested any alcoholic beverage or was under the influence of an alcoholic beverage at the time of the alleged offense." This reinforces our conclusion the presumption is rebuttable. If it were a conclusive presumption, the introduction of other evidence tending to show a person was or was not under the influence of alcohol would be unnecessary as this issue would already be determined. Thus, the natural and logical reading of the statute is that its presumptions are clearly rebuttable and not "mandatory" or conclusive.

We also note that the Evidence Code supports our conclusion that section 23155 contains rebuttable presumptions. Evidence Code section 620 provides: "The presumptions established by this article, and all other presumptions declared by law to be conclusive, are conclusive presumptions." Section 23155 is not included in that article's listing of conclusive presumptions, nor does the Vehicle Code or any other law state that it provides conclusive presumptions. Further, Evidence Code section 660 states: "The presumptions established by this article, and all other rebuttable presumptions established by law that fall within the criteria of Section 605, are presumptions affecting the burden of proof." This provision is consistent with our conclusion above that the inclusion of the phrase "burden of proof" in section 23155 clearly indicates an intention that its presumptions are rebuttable.

Finally, Gallardo's interpretation of the statute would be contrary to logic and obvious legislative intent. For example, if a person's blood alcohol was

tested 24 hours after a fatal accident and the results showed a blood-alcohol level of .04 percent, should that person be *conclusively* presumed not to have been under the influence of alcohol at the time of the accident a day earlier (even though 20 priests would testify they saw him drink a dozen beers 2 hours before the accident)? Such a result would be both inconceivable and illogical, and we summarily reject it. As the prosecution notes, section 23155 contains no time frame within which the blood-alcohol test is to be taken for purposes of its presumptions. Accordingly, its presumptions must logically be deemed rebuttable.

VI-IX*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Todd, J., and Benke, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 27, 1994.

---

*See footnote, *ante*, page 489.