Filed 9/11/25  P. v. Castillo CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>EARL RAY CASTILLO,<br><br>     Defendant and Appellant. | A170641<br><br>(Humboldt County Super. Ct. No. CR2302849) |

Earl Ray Castillo appeals from his conviction for driving under the influence of alcohol and causing bodily injury to another within 10 years of a previous conviction for driving under the influence.  (Veh. Code, § 23153, subd. (a).)[1]  He argues that his conviction must be reversed due an erroneous jury instruction concerning an inference that may be drawn based on evidence of his blood alcohol concentration.  (See § 23610, subd. (a)(1).)  Because he forfeited his challenge, we affirm.

### BACKGROUND

#### A.

In September 2023, shortly after 1:30 pm, Castillo struck and killed a pedestrian, Stephen Ray, while driving on a stretch of Highway 101 that runs through Richardson's Grove, a hiking

---

[1] Undesignated statutory references are to the Vehicle Code.

1

destination in Humboldt County.  Ray had been walking several feet ahead of his wife, who witnessed the accident.  Upon impact, Ray flew into the air and landed face down on an embankment approximately 10 feet from the road, dying instantly.  Castillo's pickup truck sustained significant front-end damage, leaving part of a broken fog light, broken glass, and other debris in the roadway.  Based on subsequent analysis of airbag control module data, Castillo was likely travelling between 43 and 47 miles per hour at the time of the collision, although his speed could have ranged from around 35 to 50 miles per hour; the speed limit was 35 miles per hour.  Castillo did not stop his car, and Ray's wife did not hear any sounds of braking.

After the crash, Castillo continued driving, stopping at one point to go to the post office, where a witness saw his "wrecked" car in the parking lot.  California Highway Patrol (CHP) officers then spotted Castillo's damaged truck on Highway 101 and began pursuing him with lights and sirens.  Castillo accelerated to speeds of up to 98 miles per hour and turned onto a dirt road but ultimately had to stop because the road was blocked by a gate.  The officers observed that Castillo's truck had sustained damage to its hood, windshield, and headlight, there was dried blood on the right front bumper, and the right fog light was missing, consistent with the debris found at the accident scene.  The right side of the hood was "crumbled up" and pushed up against the windshield, the lower right portion of the windshield was cracked, and the right front quarter panel was bent.

Once stopped, Castillo complied with the CHP officers' commands.  Officers Schmitt and Hayslett detained and handcuffed him with his hands behind his back.  The officers observed that Castillo's eyes were red and watery, he smelled of alcohol, his speech was mumbled, his gait was unsteady, and he had poor balance.  Castillo was swaying from front to back by

about three inches and Schmitt was concerned that he was at risk of falling over.

When Schmitt administered a field sobriety test, the Horizontal Gaze Nystagmus test, he observed that Castillo's eyes were not tracking smoothly and were jerking involuntarily, potential signs of intoxication. At trial, however, a defense expert, Ed Barley, opined that the test was conducted improperly. After observing a video of the test, Barley noted that the test was not performed at Castillo's eye level; rather than having Castillo look horizontally at the stimulus, his head was tilted upwards, thus making the results scientifically unreliable.

The officers also administered two breath tests using a Preliminary Alcohol Screening device. The first test, performed at 2:53 p.m., measured Castillo's blood alcohol concentration at 0.05 percent. The second test, performed at 2:55 pm, measured his blood alcohol concentration at 0.049 percent.

Based on his observations, Schmitt concluded that Castillo was under the influence of alcohol, and that it was not safe for him to continue driving at that point.

The officers then transported Castillo to a hospital, where a chemical analysis was done based on a blood draw taken at 4:31 p.m., approximately three hours after the collision. The analysis indicated that Castillo's blood alcohol concentration was 0.012 percent.

At trial, a prosecution expert, Anthony Valerio, opined that based on the Preliminary Alcohol Screening and chemical analysis results, Castillo's blood alcohol level at the time of the accident was 0.06 percent. Barley, the defense expert, estimated

based on the same test results that Castillo's blood alcohol concentration was 0.04 percent at the time of the crash.[2]

**B.**

For purposes of the crime of driving under the influence of alcohol under section 23153, subdivision (a), a " 'person is *under the influence* if, as a result of drinking or consuming an alcoholic beverage, his or her mental or physical abilities are so impaired that he or she is no longer able to drive a vehicle with the caution of a sober person, using ordinary care, under similar circumstances.' " (*People v. Stockman* (2020) 56 Cal.App.5th 1093, 1097-1099 (*Stockman*); see CALCRIM No. 2100.)

As relevant here, section 23610, subdivision (a)(1), provides that for purposes of section 23153, subdivision (a), the amount of alcohol in the defendant's blood "shall give rise to the following presumption[]": "[i]f there was at th[e] time [of the test] less than 0.05 percent, by weight, of alcohol in the person's blood, it shall be presumed that the person was *not* under the influence of an alcoholic beverage at the time of the alleged offense." (Italics added.) A contrary presumption, favoring the prosecution, applies under section 23610, subdivision (a)(3), if the defendant's blood alcohol concentration is tested at 0.08 percent or higher: in that circumstance, "it shall be presumed" that the defendant was

---

[2] Barley opined Castillo was still absorbing alcohol at the time of the Preliminary Alcohol Screening test results, so his blood alcohol concentration would have been lower than 0.05 percent at the time of the accident. However, Barley acknowledged that the test results indicated that Castillo's blood alcohol concentration was decreasing. Barley testified that he believed Castillo's alcohol absorption was increasing because the spread in the test results (from 0.05 percent to 0.012 percent) suggested an elimination rate that was too high to fit the numbers. However, he did not explain how an assumption that Castillo's blood alcohol levels were increasing at the time of the accident accounts for that pattern.

4

under the influence of alcohol at the time of the charged offense. Notwithstanding the applicability of either presumption, section 23610 "shall not be construed as limiting the introduction of any other competent evidence" as to whether the defendant had ingested or was under the influence of alcohol at the time of the alleged offense. (§ 23610, subd. (c).)

Section 23610, subdivision (a)(1), establishes a rebuttable presumption in favor of the defense that "affect[s] the burden of proof." (§ 23610, subd. (a); see also *People v. Gallardo* (1994) 22 Cal.App.4th 489, 496 (*Gallardo*) [addressing identical wording in a predecessor statute, § 23155, subd. (a)(1)].) Section 23610, subdivision (a)(1), shifts the burden of proof to the prosecution by placing a "further burden" on the People to come "forward with sufficient proof to defeat the presumption." (*Gallardo*, at p. 496.) *Gallardo* rejected the argument that the statutory language was a "conclusive presumption," explaining that otherwise the language allowing " 'any other competent evidence' " relevant to whether the defendant was under the influence of alcohol would be superfluous. (*Ibid.*; see also *People v. Andersen* (1994) 26 Cal.App.4th 1241, 1250 (*Andersen*) [explaining that a predecessor statute, "Vehicle Code section 23155, subdivision (a)(1), . . . creates a rebuttable presumption . . . that a tested blood alcohol level of less than 0.05 percent means the defendant was not under the influence of alcohol at the time of the offense"].)

In *People v. Roder* (1983) 33 Cal.3d 491 (*Roder*), our Supreme Court discussed the difference between a rebuttable presumption (or "mandatory presumption") and a permissive inference. *Roder* explained that, when a rebuttable presumption applies, the jury is "require[d]" to draw the assumption if the basic facts are proved, unless the party bearing the burden of proof puts forth "sufficient evidence to rebut the presumed fact." (*Id.* at pp. 501-502, italics omitted; see also *id.* at p. 498.) In contrast, a permissive inference is one that the jury *may*, but

need not, draw from the basic facts. (*Id*. at pp. 502-503; see also Evid. Code, § 600 [distinguishing between a "presumption" and an "inference"].) Unlike a rebuttable presumption, a permissive inference leaves the jury " 'free to credit or reject the inference and does not shift the burden of proof.' " (*Roder,* at p. 498; see also *People v. Beltran* (2007) 157 Cal.App.4th 235, 242 (*Beltran*).) A jury instruction on a permissive inference informs the jury that "if it found the basic facts it [can], but [i]s not required to" draw the inference, whereas a jury instruction on a rebuttable presumption informs the jury that if it finds the basic facts, it " 'shall' " draw the presumption unless it is rebutted by other evidence. (*Roder*, at p. 503.)

At issue in *Roder* was a rebuttable presumption, adverse to the defendant, concerning the knowledge element of the offense of receipt of stolen property. (*Roder*, *supra*, 33 Cal.3d at pp. 494, 495-496.) The trial court had instructed the jury in that case that, if specified facts were found, then the jury " 'shall presume' " that the defendant knew the property in question was stolen " 'unless from all the evidence ' " the jury had a reasonable doubt as to the defendant's knowledge. (*Id*. at pp. 495-496.) *Roder* explained that a mandatory or rebuttable presumption – which shifts the burden of proof onto the defendant – "improperly relieve[s] the prosecution of its burden of proving all elements of the offense beyond a reasonable doubt." (*Id*. at p. 499.) *Roder* concluded that the instruction given in that case may have been understood by the jury as a rebuttable presumption, rather than a permissive inference, and therefore held that the giving of the instruction was constitutional error. (*Id*. at pp. 503-504; see also *Beltran*, *supra*, 157 Cal.App.4th at p. 241.)

As *Roder* explained, "[u]nder Evidence Code section 501, any statute which assigns the burden of proof in a criminal case is made subject to the overriding rule that the prosecution bears the burden of proving guilt beyond a reasonable doubt." (*Roder*,

6

*supra*, 33 Cal.3d at p. 506.)  In light of Evidence Code section 501 and the constitutional limits on the use of rebuttable presumptions in a criminal case, it is "in keeping with the overall legislative intent [of such statutes] for courts to pare down existing statutory presumptions to constitutionally permissible limits, rather than to abrogate them altogether." (*Ibid*.)  As a result, *Roder* held that, on retrial, the trial court should construe the knowledge of stolen property presumption as "only a permissive inference, not a mandatory presumption." (See *id.* at p. 507; see also *Beltran*, *supra*, 157 Cal.App.4th at p. 244 [explaining that permissive inferences "do not operate in an unconstitutionally pernicious manner"].)  Following *Roder*, courts have treated statutory presumptions favoring the prosecution, such as the one in Vehicle Code section 23610, subdivision (a)(3), as establishing a permissive inference.  (See *People v. Milham* (1984) 159 Cal.App.3d 487, 505; see also *People v. McNeal* (2009) 46 Cal.4th 1183, 1199 (*McNeal*); Judicial Council of Cal., Crim. Jury Instns. (2025 ed.) Bench Notes to CALCRIM No. 2111.)

## C.

Castillo was charged with gross vehicular manslaughter (count one; Pen. Code, § 192, subd. (c)(1)); driving under the influence (DUI) of alcohol causing injury within 10 years of a previous DUI (count two; Veh. Code, § 23153, subd. (a)); leaving the scene of an accident (count three; *id.*, § 20001, subd. (a)); fleeing a pursuing peace officer's motor vehicle, a misdemeanor (count four; *id.*, § 2800.1, subd. (a)); driving at an unsafe speed, an infraction (count five; *id.*, § 22350); driving with a blood alcohol level of 0.01 percent or more while on DUI probation, an

infraction (count seven; *id*., § 23154, subd. (a)); and unlawful turning movement, an infraction (count eight; *id*., § 22107).[3]

At trial, in connection with the DUI charge, Castillo requested a jury instruction based on section 23610, subdivision (a)(1). His proposed instruction read: "In evaluating the results of any evidentiary chemical analysis, if as a result defendant's blood alcohol level was a 0.05 percent or less at the time of the chemical analysis, you may, but are not required to, conclude that the defendant was not under the influence of an alcoholic beverage at the time of the alleged offense." Defense counsel explained to the court that the proposed wording was based on the model jury instruction applicable when the defendant's blood alcohol concentration is tested at 0.08 percent or higher, which reflected a permissive inference. (See CALCRIM No. 2100.) The trial court granted Castillo's request with a minor modification, such that the jury was instructed: "In evaluating the results of any evidentiary chemical analysis, if you find that the defendant's blood alcohol level at the time of the chemical analysis was a 0.05 percent or less, you may, but are not required to, conclude that the defendant was not under the influence of an alcoholic beverage at the time of the alleged offense."

Ultimately, the jury found Castillo not guilty of gross vehicular manslaughter, but it convicted him of the lesser included offense of vehicular manslaughter with ordinary negligence. In addition to finding him guilty of driving under the influence of alcohol within 10 years of a DUI, the jury found true a great bodily injury enhancement. Further, the jury found Castillo not guilty on count eight but issued guilty verdicts on the remaining counts.

---

[3] Castillo was also charged with driving while using a cell phone, an infraction (count six; § 23123, subd. (a)), but the court dismissed that count on the prosecution's motion.

8

The trial court sentenced Castillo to a total of seven years in prison.

## DISCUSSION

Castillo asserts that, although he did not object to the jury instruction on blood alcohol concentration, he has not forfeited his challenge because the error affected his substantial rights. (See Pen. Code, § 1259; *People v. Mitchell* (2019) 7 Cal.5th 561, 586 [holding that an unpreserved challenge to a jury instruction is not forfeited if, assuming the challenge has merit, the defendant's substantial rights would be affected]; see also *Andersen*, *supra*, 26 Cal.App.4th at p. 1249.) To determine whether Castillo's substantial rights were affected, we assume the trial court erred and assess whether the error prejudiced him. (See *Andersen*, at p. 1249.)

Castillo contends that the jury instruction on blood alcohol concentration was erroneous because it substituted a mere permissive inference for what should have been a rebuttable presumption under section 23610, subdivision (a)(1). Assuming Castillo's challenge has merit, the trial court should have instead instructed the jury that, if it found that his blood alcohol concentration was tested at less than 0.05 percent, it was *required* to presume that he was not under the influence of alcohol, unless it concluded that the presumption was rebutted by other evidence. (See *Gallardo*, *supra*, 22 Cal.App.4th at p. 496; see also *Roder*, *supra*, 33 Cal.3d at pp. 502-503.) Based on the evidence at trial, however, we conclude that any instructional error would have been harmless.[4]

---

[4] In light of our conclusion, we need not address the People's contention that Castillo forfeited his instructional challenge by inviting the error.

9

**1.**

As an initial matter, we reject Castillo's argument that the standard for prejudice is whether the error was harmless beyond a reasonable doubt under *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*).  (See *People v. Lynch* (2024) 16 Cal.5th 730, 755 (*Lynch*).)  The proper standard is found in *People v. Watson* (1956) 46 Cal.2d 818, 836, under which the defendant is not prejudiced unless, in the absence of the error, a different outcome is " 'reasonably probable.' " (*Lynch*, at p. 755.)

Castillo relies on cases holding that, where the jury was improperly instructed with a rebuttable presumption or permissive inference that shifted the burden of proof to the defendant, the *Chapman* standard applies because shifting the burden to the defendant unconstitutionally diminishes the prosecution's burden of proving guilt beyond a reasonable doubt. (See, e.g.*, Beltran, supra,* 157 Cal.App.4th at p. 247; *People v. James* (2000) 81 Cal.App.4th 1343, 1360-1362.)  Unlike in those cases, however, the terms of the instruction given here never shifted the burden of proof to the defendant, so at all times the prosecution bore the burden of proving Castillo's guilt beyond a reasonable doubt.  Because the error was only one of state law (§ 23610, subd. (a)(1)), we apply the *Watson* test for harmless error. (*Lynch, supra,* 16 Cal.5th at p. 755.)

**2.**

Even had the jury been instructed that Castillo was entitled to a rebuttable presumption that he was not intoxicated with a blood alcohol concentration of less than 0.05 percent, a different outcome was not reasonably probable on the record here.  Because the prosecution presented abundant evidence that Castillo was too intoxicated to safely operate a vehicle and there was hardly any evidence indicating that he was sober, the jury would have reached the same verdict.

Regardless of Castillo's precise blood alcohol level at the time of the crash, the question for the jury was whether he was " 'so impaired that he . . . [was] no longer able to drive a vehicle with the caution of a sober person, using ordinary care, under similar circumstances.' " (*Stockman, supra*, 56 Cal.App.5th at pp. 1097-1099; see CALCRIM No. 2100.) The evidence that Castillo was not exercising ordinary care in driving his vehicle was one-sided. He was driving over the speed limit around a blind curve in an area frequented by hikers when he struck the victim. (See *Stockman*, at p. 1098 [explaining that the defendant's manner of driving is relevant in determining whether the defendant was under the influence of alcohol].) Moreover, he did not stop or even brake after the crash, even though the force of the collision "crumbled up" the hood of his car, cracked his windshield, and bent his front quarter panel. According to the defense, Castillo did not stop because he did not realize that he had hit anyone. Whether he failed to stop because he knew he was driving under the influence or because he was oblivious to the accident despite the obvious wreckage to his car, either alternative indicates his driving was impaired. Castillo drove on in his wrecked car, ran an errand at the post office, and eventually led the authorities on a high speed chase before being arrested. (See *Gallardo, supra*, 22 Cal.App.4th at pp. 493-494 [defendant's actions in running away after the car crash indicated consciousness of guilt of driving while under the influence of alcohol].) Indeed, based on the evidence of his driving, the jury found Castillo guilty of vehicular manslaughter with ordinary negligence, meaning that the jury necessarily found that he was driving negligently—without ordinary care—at the time of the crash.

In addition to the evidence that Castillo was driving without the ordinary care of a sober person, CHP officers' observations of him overwhelmingly pointed to a conclusion that his negligent driving was due to intoxication. Although Castillo followed the officers' commands when he was apprehended, he

also exhibited numerous signs of impairment, including red, watery eyes, mumbled speech, and an odor of alcohol on his breath and person. Castillo's gait was unsteady, he was swaying back and forth by about three inches, and he had poor balance. At one point, Schmitt had to put his hand on Castillo's shoulder to keep him from falling over. (See *McNeal*, *supra*, 46 Cal.4th at p. 1198 ["[E]vidence of actual impairment may include the driver's appearance, an odor of alcohol, slurred speech, impaired motor skills, slowed or erratic mental processing, and impaired memory or judgment."].)

Valerio, the prosecution expert, testified that extrapolating backwards from the test results, and assuming his blood alcohol levels were decreasing, Castillo's blood alcohol concentration would have been approximately 0.06 percent at the time of the accident. Alcohol causes impairments that affect judgment, memory, decision-making, motor coordination, balance, and speech. For example, Valerio explained that as a person's blood alcohol level increases, large muscle groups are affected, which leads to difficulty maintaining balance. Signs of impairment can be seen when a person's blood alcohol concentration is at 0.03 percent, when reaction time and visual tracking can be affected. At a 0.04 percent blood alcohol concentration, the facilities a person uses to drive can start to be affected. According to Valerio, at 0.04 percent, "if a person is faced with new information or something unexpected [that] happens [while] driving, that may just be enough impairment to put that person in an unsafe position." At a 0.05 percent blood alcohol concentration, muscle coordination, decision making, tracking objects, reaction time, and paying attention to signals can be affected.

The defense did not dispute that Castillo had ingested alcohol prior to the crash, but it sought to undermine the prosecution's case by presenting expert testimony that each

symptom of intoxication he exhibited did not necessarily mean he was too impaired to safely operate a car.  Barley, the defense expert, estimated that Castillo's blood alcohol concentration was likely 0.04 percent at the time of the crash, and he opined that at that level a person would not be too impaired to drive.  However, Barley acknowledged that when a person's blood alcohol concentration is less than 0.08 percent, "more information would be needed" to determine whether or not the person is impaired for the purpose of driving.  Barley testified that red and watery eyes, the odor of alcohol, slurred speech, and unsteady gait are objective signs of intoxication, but he maintained that "by themselves," they are not necessarily correlated with impairment for purposes of driving.  The defense also put on persuasive evidence countering the reliability of the Horizontal Gaze Nystagmus field sobriety test administered to Castillo.

Viewing the record in its entirety, and without relying on the Horizontal Gaze Nystagmus test results, it is not reasonably probable that a jury instructed on a rebuttable presumption arising out of a blood alcohol concentration of less than 0.05 percent would have reached a different verdict.  Although Barley's testimony suggested possible innocent explanations for each symptom of intoxication Castillo exhibited by itself, there was no reasonable view of the evidence that would account for the record as a whole.  Regardless of Castillo's precise blood alcohol concentration during the crash, his negligent driving, his failure to stop, his (alleged) obliviousness, and his decision to flee the authorities strongly support a conclusion that his judgment was impaired before he was apprehended, and once stopped he exhibited not one but several signs of mental and physical impairment due to alcohol.  (Cf. *Gallardo, supra,* 22 Cal.App.4th at p. 494 [holding that the presumption that the defendant was not under the influence of alcohol based on a blood alcohol concentration of 0.05 percent was rebutted where the defendant tested at 0.03 percent and exhibited symptoms including a red

13

appearance, watery eyes, poor balance, unsteady gait, and an alcoholic odor on his breath].)  Further, apart from the evidence that Castillo followed the officers' instructions once stopped, there was no indication in the record that he was sober.  Under these circumstances, any presumption arising from a blood alcohol concentration of less than 0.05 percent would have been rebutted by the overwhelming evidence that, due to intoxication, Castillo was unable to drive with the ordinary care of a sober person at the time of the crash.

We therefore conclude that Castillo's substantial rights were not affected by the jury instruction given by the trial court. Because his instructional challenge is forfeited as a result, we do not reach the merits of his challenge.

**DISPOSITION**

The judgment is affirmed.


BURNS, J.

WE CONCUR:


JACKSON, P. J.
SIMONS, J.

*People v. Castillo (A170641)*

14